**No. 23-1151**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

———————————

DENISE EVANS,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

———————————

On Appeal from the United States District Court
for the Northern District of Illinois, No. 22-1627 (Feinerman, J.)

———————————

## BRIEF FOR THE APPELLEE

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

MORRIS PASQUAL
  *Acting United States Attorney*

MARK B. STERN
DANA KAERSVANG
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7216*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 307-1294*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF THE ISSUES...................................................................1

PERTINENT STATUTES AND REGULATIONS....................................2

STATEMENT OF THE CASE ......................................................................3

    A.    Statutory Background...............................................................3

        1.    Suits against the United States under the FTCA.........3

        2.    Substitution of the United States in suits against
            federal employees.............................................................3

        3.    Substitution of the United States for "deemed"
            employees under the Public Health Service Act. ..........5

    B.    Factual and Procedural Background .......................................8

SUMMARY OF ARGUMENT ....................................................................12

STANDARD OF REVIEW.........................................................................14

ARGUMENT ...............................................................................................14

The District Court Correctly Dismissed Plaintiff's Suit for Failure
    To Present a Timely Administrative Claim. ....................................14

    A.    Evans's claim is time barred because she did not
        present it to HHS within two years. .....................................14

    B.    The Westfall Savings Clause does not apply to cases
        where the United States is substituted as the
        defendant under 42 U.S.C. § 233...........................................15

C.    The district court did not abuse its discretion in holding that Evans did not satisfy the requirements for equitable tolling. ...................................................................25

CONCLUSION .........................................................................................29

CERTIFICATE OF COMPLIANCE

ADDENDUM

SUPPLEMENTAL APPENDIX

# TABLE OF AUTHORITIES

**Cases:**                                                             **Page(s)**

*Arroyo v. United States*,
656 F.3d 663 (7th Cir. 2011) ........................................................ 22, 24

*Arteaga v. United States*,
711 F.3d 828 (7th Cir. 2013) .............................................................. 26

*Blanche v. United States*,
811 F.3d 953 (7th Cir. 2016) ...................................... 22, 23, 24, 25, 26

*Celestine v. Mount Vernon Neighborhood Health Ctr.*,
403 F.3d 76, 78 (2d Cir. 2005) ........................................................... 24

*Chaudhry v. Nucor Steel-Indiana*,
546 F.3d 832 (7th Cir. 2008) .............................................................. 14

*Chronis v. United States*,
932 F.3d 544 (7th Cir. 2019) ........................................................ 22, 23

*Dawson v. United States*,
No. 16-827-DRH-SCW, 2018 WL 2440516 (S.D. Ill. May 31, 2018) ... 11

*FAA v. Cooper*,
566 U.S. 284 (2012) ........................................................................... 20

*Fayoade v. Spratte*,
284 F. App'x 345 (7th Cir. 2008) ....................................................... 27

*Gutierrez de Martinez v. Lamagno*,
515 U.S. 417 (1995) ............................................................................. 4

*Hahn v. United States*,
524 U.S. 236 (1998) ............................................................................ 24

*Hui v. Castaneda*,
559 U.S. 799 (2010) ..................................................................... 11, 16

*Irwin v. Department of Veterans Affairs*,
498 U.S. 89 (1990) ............................................................................. 25

*Johnson v. United States*,
576 U.S. 591 (2015) ........................................................................... 23

*Knapp v. United States*,
No. 21-1523, 2022 WL 3657184 (3d Cir. Aug. 25, 2022) ................... 19

*Lo v. Endicott*,
506 F.3d 572 (7th Cir. 2007) ............................................................ 27

*McNeil v. United States*,
508 U.S. 106 (1993) ...................................................................... 3, 4

*Michigan v. Bay Mills Indian Cmty.*,
572 U.S. 782 (2014) ........................................................................ 20

*O'Brien v. United States*,
56 F.4th 139 (1st Cir. 2022) ................................................. 21, 22, 24

*Obriecht v. Foster*,
727 F.3d 744 (7th Cir. 2013) ............................................................ 14

*Oklahoma v. Castro-Huerta*,
142 S. Ct. 2486 (2022) ..................................................................... 23

*Osborn v. Haley*,
549 U.S. 225 (2007) ........................................................................ 21

*P.W. by Woodson v. United States*,
990 F.3d 515 (7th Cir. 2021) ..................................... 12, 19, 23, 26, 28

*Pace v. DiGuglielmo*,
544 U.S. 408 (2005) .................................................................. 13, 25

*Patel v. United States*,
No. CV-20-01864-PHX-DLR, 2021 WL 2454048 (D. Ariz. 2021) ...... 24

*Thomas v. Phoebe Putney Health Sys., Inc*,
972 F.3d 1195 (11th Cir. 2020) ................................................... 17, 22

*Thompson v. United States*,
No. 19-CV-08065, 2023 WL 2751112 (N.D. Ill. 2023) ....................... 24

*Threadgill v. Moore U.S.A., Inc.*,
269 F.3d 848 (7th Cir. 2001) ............................................................ 25

*United States v. Crawley*,
837 F.2d 291 (7th Cir. 1988) ............................................................ 22

**Statutes:**

Federal Tort Claims Act (FTCA):
    28 U.S.C. § 2401(b) ...................................................... 1, 3, 12, 14, 15
    28 U.S.C. § 2675(a) ...................................................... 1, 3, 4, 9, 10
    28 U.S.C. § 2679(b) ...................................................... 15, 17
    28 U.S.C. § 2679(d) ...................................................... 1, 4, 5, 11, 13, 15, 21
    28 U.S.C. § 2679(d)(2) .................................................. 4, 21
    28 U.S.C. § 2679(d)(3) .................................................. 4, 5
    28 U.S.C. § 2679(d)(5) .................................................. 2, 5, 11, 13, 15, 18
    28 U.S.C. § 2679(d)(5)(B) .............................................. 19

Federally Supported Health Centers Assistance Act of 1992,
    Pub. L. No. 102-501, 106 Stat. 3268
    (codified at 42 U.S.C. § 233)............................................6-7

Federally Supported Health Centers Assistance Act of 1995,
    Pub. L. No. 104-73, 109 Stat. 777
    (codified at 42 U.S.C. § 233)............................................ 7

National Swine Flu Immunization Program of 1976,
    Pub. L. 94-380, 94, Stat. 1113
    (codified at 42 U.S.C. § 247b(k)(2)(A)(iii), repealed 1978)................. 17,

Public Health Service Act:
    42 U.S.C. § 233 .......................................................... 6, 7, 9, 15, 16, 18
    42 U.S.C. § 233(a) ....................................................... 6, 8
    42 U.S.C. § 233(a)-(c) ................................................... 1
    42 U.S.C. § 233(c) ....................................................... 7, 8, 15, 16, 17, 18, 21, 22
    42 U.S.C. § 233(g) ....................................................... 1, 6, 7, 21, 23
    42 U.S.C. § 233(g)(1)(A) ................................................. 6, 13, 16
    42 U.S.C. § 233(g)(1)(B) ................................................. 13, 16
    42 U.S.C. § 233(g)(1)(C) ................................................. 7
    42 U.S.C. § 233(g)(1)(D) ................................................. 13, 16
    42 U.S.C. § 233(g)(1)(E) ................................................. 13, 16
    42 U.S.C. § 233(g)(1)(F) ................................................. 13, 16

42 U.S.C. § 233(g)(4) ................................................................ 16

42 U.S.C. § 233(h) ................................................................... 6

42 U.S.C. § 233(i)(1) ........................................................... 13, 16

42 U.S.C. § 233(*l*) ............................................................ 16, 21

42 U.S.C. § 233(*l*)(1) .................................................... 8, 13, 16

42 U.S.C. § 233(*l*)(2) ........................................................ 8, 22

42 U.S.C. § 233(p)(3)(A)(ii)-(iii) ............................................. 17

42 U.S.C. § 254b ................................................................. 1, 6


50 U.S.C. § 2780(d) ............................................................... 17

## **Regulation:**

42 C.F.R. § 6.6 .................................................................... 7

## **Rule:**

Fed. R. Civ. P. 12(b)(6) .......................................................... 10

## STATEMENT OF JURISDICTION

Plaintiff-Appellant's jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUES

Employees of private health centers that receive certain federal grant funds under the Public Health Service Act, 42 U.S.C. § 254b, can, under some circumstances, qualify for federal liability protections for medical malpractice under the Federal Tort Claims Act (FTCA). The Public Health Service Act, as amended by the Federally Supported Health Centers Assistance Act (Health Centers Act), governs how the United States intervenes to remove and substitute itself in such cases. *See id.* § 233(a)-(c), (g). This process differs from that governing removal and substitution in most suits involving government employees set out in the Westfall Act. *See* 28 U.S.C. § 2679(d).

Regardless of the original defendant, a plaintiff must exhaust administrative remedies before pursuing an FTCA suit against the United States. 28 U.S.C. § 2675(a). This ordinarily must occur within two years of claim accrual. *Id.* § 2401(b). In suits governed by the Westfall Act, that Act's Savings Clause may provide additional time to exhaust administrative remedies if the plaintiff initially filed suit

against the government employee within two years. *Id.* § 2679(d)(5). The Health Centers Act does not have an analogous provision.

In this case, plaintiff, Denise Evans, filed a medical malpractice suit against a number of medical providers involved in her care, including a federally funded health center and a doctor employed by the health center. The United States was substituted for the health center and its employee, and the claims against United States were dismissed because Evans had not exhausted her administrative remedies. After Evans exhausted her administrative remedies, she filed this suit against the United States. The district court dismissed the suit because her administrative claim was not presented within two years of claim accrual. The issues presented in this case are:

1. Whether the district court correctly concluded that the Westfall Savings Clause does not apply in this case.

2. Whether the district court abused its discretion in declining to allow Evans equitable tolling.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

A.     Statutory Background

      1.     Suits against the United States under the FTCA.

In order to pursue a suit against the United States under the FTCA, a plaintiff must first exhaust her administrative remedies by "present[ing the claim] in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. §§ 2401(b), 2675(a); *see also McNeil v. United States*, 508 U.S. 106, 111 (1993). Plaintiff must give the agency at least six months to act on the claim before filing suit, unless the agency denies the claim. 28 U.S.C. § 2675(a). This requirement was designed to "reduce unnecessary congestion in the courts" by "mak[ing] it possible for the claim first to be considered"—and potentially settled by—the responsible agency. *McNeil*, 508 U.S. at 112 nn.7, 8 (quotation marks omitted).

      2.     Substitution of the United States in suits against federal employees.

The Federal Employees Liability Reform and Tort Compensation Act of 1988, generally known as the Westfall Act, provides for the substitution of the United States where the Attorney General's designee certifies that a federal employee committed the acts at issue while

3

acting within the scope of their employment. *See* 28 U.S.C. § 2679(d). Following substitution, the case proceeds as a suit against the United States under the FTCA and may properly be dismissed for failure to present an administrative claim, which is a prerequisite to filing suit. 28 U.S.C. § 2675(a); *McNeil*, 508 U.S. at 111.

The Westfall Act also contains its own removal procedures when the suit against the federal employee is filed in state court. *See* 28 U.S.C. § 2679(d)(2), (3). Under the Westfall Act, "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment," the Attorney General "shall" remove the suit to federal district court and the United States is substituted as defendant. *Id.* § 2679(d)(2). The Attorney General's certification is conclusive "for purposes of removal," *id.*, although a plaintiff can contest substitution in district court, *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436-37 (1995). If the Attorney General refuses to certify that the defendant employee was acting within the scope of his employment, "the employee may at any time before trial petition the court" to so certify. 28 U.S.C. § 2679(d)(3). The Attorney General may then remove the case to district court. *Id.* If the district court determines that the

4

defendant employee was acting within scope of employment, the United States is substituted for the defendant. *Id.* Otherwise, the case is remanded to state court. *Id.*

When the United States is substituted as defendant under the Westfall Act and the suit is then dismissed for failure first to present an administrative claim, a plaintiff may, in some circumstances, present an otherwise untimely administrative claim and have it "deemed" timely. 28 U.S.C. § 2679(d)(5). The Westfall Savings Clause provides that an administrative claim will be "deemed" timely presented if: 1) "the United States is substituted as the party defendant under" 28 U.S.C. § 2679(d); 2) the action into which the United States is substituted is "dismissed for failure first to present" an administrative claim; 3) "the claim would have been timely had it been filed on the date the underlying civil action was commenced"; and 4) "the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action." *Id.* § 2679(d)(5).

3.    Substitution of the United States for "deemed" employees under the Public Health Service Act.

Under the Public Health Service Act, the exclusive remedy for medical malpractice committed by Public Health Service employees

5

acting within the scope of their employment is a tort action against the United States under the FTCA. *See* 42 U.S.C. § 233(a). The Health Centers Act extends this liability protection to health centers receiving certain federal health grants under 42 U.S.C. § 254b, as well as to their officers, employees, and qualified contractors, subject to certain conditions. *Id.* § 233(g). To be eligible for this liability protection, the health center must submit an application to the Secretary of Health and Human Services (HHS), meet certain requirements, and obtain annual approval from the Secretary. *See id.* § 233(g), (h). If the application is approved, the Secretary "deem[s]" the health center and its officers, employees, and qualified contractors to be employees of the Public Health Service for the upcoming calendar year "[f]or purposes of" § 233. *Id.* § 233(g)(1)(A).

The Public Health Service Act, as amended by the Health Centers Act, establishes a detailed scheme for removal to federal court and substitution of the United States. Congress first enacted the provisions governing health centers five years after enactment of the Westfall Act, and amended them three years later. *See* Federally Supported Health Centers Assistance Act of 1992, Pub. L. No. 102-501, 106 Stat. 3268

6

(codified at 42 U.S.C. § 233); Federally Supported Health Centers Assistance Act of 1995, Pub. L. No. 104-73, 109 Stat. 777 (codified at 42 U.S.C. § 233). Both times, it elected to add provisions relating to health centers to the Public Health Service Act rather than the Westfall Act, and it "deemed" health centers to be Public Health Service employees only "[f]or purposes of" 42 U.S.C. § 233. *See, e.g.*, 42 U.S.C. § 233(g).

As with the Westfall Act, substitution under § 233 is only proper if the defendant was acting within the scope of her employment. Because health care center employees are not employees of the United States, however, it is also necessary to determine whether the conduct that gave rise to the suit fell within the scope of the coverage provided by statute. *See, e.g.*, 42 U.S.C. § 233(g)(1)(C); 42 C.F.R. § 6.6.

When a case is filed against a deemed health center or employee in state court, the Attorney General's designee can remove the case "any time before trial." 42 U.S.C. § 233(c). In order to prevent default judgments in state court, the Health Centers Act also provides that the Attorney General "within 15 days after being notified" of the filing of a suit in state court, "shall make an appearance" and "advise" the court "whether the Secretary has" deemed the defendant "to be an employee

7

of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject" of the suit. *Id.* § 233(*l*)(1). If the Attorney General considers it appropriate, the government removes the case to federal court and the United States is substituted for the deemed defendants under Section 233(c). *Id.* § 233(c). The suit then proceeds against the United States under the FTCA. *Id.* § 233(a), (c). If the Attorney General fails to appear, the defendant may seek to remove the case. *Id.* § 233(*l*)(2).

The Public Health Service Act does not include a savings provision analogous to the Westfall Savings Clause. Accordingly, if an administrative claim is not presented within two years of the claim's accrual, the suit should be dismissed.

B.     Factual and Procedural Background

1. Denise Evans, plaintiff in this medical malpractice suit, asserts she received negligent medical care from Dr. Osarentin Oronsaye, an employee of Access Community Health Network ("Access"), which is a federally funded health center. Plaintiff's Appendix (App.) 2-3. Evans asserts that Dr. Oronsaye failed to discuss test results and treatment options with her prior to performing a hysterectomy on August 2, 2019,

and that Dr. Oronsaye was negligent in failing to identify and protect her ureter during the surgery. App. 7-8. Plaintiff was diagnosed and treated for a ureteral injury on August 14, 2019. App. 22.

2. This is plaintiff's second lawsuit involving this subject matter. Plaintiff first filed suit on July 9, 2021, in the Circuit Court of Cook County, Illinois against Dr. Oronsaye, Access, and the hospital system where the surgery took place. App. 6-8, 10, 13, 15, 22; *Evans v. Oronsaye*, No. 21-4805 (N.D. Ill.) (*Evans I*).

The United States Attorney concluded that Access and Dr. Oronsaye were entitled to coverage under the Health Centers Act. App. 26. The United States removed the action to federal district court pursuant to 42 U.S.C. § 233, and the United States was substituted for Dr. Oronsaye and Access. App. 2. The United States then moved to dismiss the claims against it because Evans had not exhausted her administrative remedies as required by the FTCA. App. 27; *see* 28 U.S.C. § 2675(a). The district court granted the motion and remanded the claims against the remaining defendants to state court. App. 27-28.

While the prior suit was pending, on September 23, 2021, Evans presented an administrative claim for her alleged injuries to HHS.

Supplemental Appendix (SA) 9, 11-16. This was more than two years after her ureteral injury was diagnosed on August 14, 2019. App. 32. Evans waited the requisite six months after presenting her administrative claim, *see* 28 U.S.C. § 2675(a), and then filed this suit against the United States in federal district court alleging essentially the same medical negligence claims as her prior complaint. *Compare* App. 7-8, *with* SA 1-3.

The United States again moved to dismiss Evans' complaint asserting, *inter alia*, that Evans had failed to timely exhaust administrative remedies. App. 29. Evans did not dispute that her claim accrued on August 14, 2019, but argued that her claim was timely under the Westfall Savings Clause and that she was entitled to equitable tolling. *See* App. 32-33, 35.

3. The district court granted the United States' motion to dismiss on timeliness grounds under Federal Rule of Civil Procedure 12(b)(6). App. 37. The district court rejected Evans's argument that her claim was timely by virtue of the Westfall Savings Clause, reasoning that, "[b]y its plain terms, . . . the savings provision applies only if 'the United States is substituted as the party defendant *under this subsection*,'" meaning

28 U.S.C. § 2679(d). App. 33 (quoting 28 U.S.C. § 2679(d)(5)). The district court reasoned that "the savings provision does not apply where, as here, the United States is substituted as a party defendant under Section 233 rather than under Section 2679(d)." App. 34. The court explained that the Health Centers Act and the Westfall Act "are not one in the same," App. 35 (quoting *Dawson v. United States*, No. 16-827-DRH-SCW, 2018 WL 2440516, at *2 (S.D. Ill. May 31, 2018)), and "the Supreme Court has rejected the notion that '§ 233(a) incorporates the entirety of the FTCA, as amended by the Westfall Act,'" *id.* (quoting *Hui v. Castaneda*, 559 U.S. 799, 808-09 (2010)). Rather, given that the "Westfall Act was enacted well after Congress's enactment of the statutory text that became Section 233," the district court found it "'telling that Congress declined to enact' a savings provision that encompassed Section 233(c)." *Id.* (quoting *Hui*, 559 U.S. at 807).

The district court noted that "dicta in some Seventh Circuit cases make [the] assumption" that the Westfall Act applies to Section 233 cases. App. 34. But the court did not find such statements conclusive because "dicta cannot defeat a statute's plain text" and this Court more recently "conveyed its view" that this "remains an open question in the

Circuit." *Id.* (citing *P.W. by Woodson v. United States*, 990 F.3d 515, 522 n.4 (7th Cir. 2021)).

The district court also determined that equitable tolling was "inappropriate here." App. 37. The district court reasoned that "Evans's apparent failure to realize she needed to pursue relief under the FTCA does not warrant equitable tolling," as "it was easily ascertainable from the public record that Access was federally funded." App. 36. The district court determined that, had Evans taken "the simple step of ascertaining Access's status as a federally funded entity," it would have put her "on notice that she needed to pursue relief" under the FTCA. App. 36-37.

## SUMMARY OF ARGUMENT

1. The district court correctly dismissed Evans's claim as time barred. Evans was required to present an administrative claim within two years of claim accrual to preserve her ability to bring suit against the United States. 28 U.S.C. § 2401(b). She acknowledges that she did not do so. Br. 7.

2. The Westfall Savings Clause, on which Evans seeks to rely, applies to suits brought against government employees in which

substitution occurs pursuant to the Westfall Act itself. 28 U.S.C.
§ 2679(d)(5). The Health Centers Act creates a separate scheme for
removal and substitution in suits against federal grantees.  These
schemes are distinct from each other. Federally funded health centers
are not government employees with the scope of the Westfall Act. They
are only "deemed" to be employees "[f]or purposes of this section"—
meaning § 233—as the statute repeatedly makes clear. *See, e.g.*, 42
U.S.C. § 233(g)(1)(A), (B), (D), (E), (F), (i)(1), (*l*)(1). And, in any event,
the Westfall Savings Clause only applies to suits "in which the United
States is substituted as the party defendant under" 28 U.S.C. § 2679(d),
*see id.* § 2679(d)(5), while removal and substitution in this case were
effected under the distinct removal and substitution provisions in the
Health Centers Act. App. 3.

   3. The district court did not abuse its discretion in holding that
Evans did not satisfy the requirements for equitable tolling. A plaintiff
seeking to assert equitable tolling must demonstrate: "(1) that he has
been pursuing his rights diligently, and (2) that some extraordinary
circumstance stood in his way*." Pace v. DiGuglielmo*, 544 U.S. 408, 418
(2005). This Court has repeatedly concluded that a plaintiff who fails to

check the HHS database to determine whether her medical provider

may be eligible for coverage under the Health Centers Act cannot

satisfy this test.

## STANDARD OF REVIEW

This Court will review the district court's order granting a motion to

dismiss for failure to state a claim *de novo. See Chaudhry v. Nucor

Steel-Indiana*, 546 F.3d 832, 836 (7th Cir. 2008). The standard of review

for the district court's order denying equitable tolling is abuse of

discretion. *See Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013).

## ARGUMENT

The District Court Correctly Dismissed Plaintiff's Suit for
Failure To Present a Timely Administrative Claim.

A.  Evans's claim is time barred because she did not
    present it to HHS within two years.

As prerequisite to filing suit under the FTCA, a plaintiff must

present an administrative claim within two years of the claim's accrual.

28 U.S.C. § 2401(b) ("A tort claim against the United States shall be

forever barred unless it is presented in writing to the appropriate

Federal agency within two years after such claim accrues . . . .").

Evans complains of medical malpractice before and during a surgery

on August 2, 2019. SA 2. She alleges that she was diagnosed with and

treated for a ureteral injury caused by this surgery on August 14, 2019.

App. 22. Evans does not dispute that her claim accrued no later than

August 14, 2019. App. 32. But she did not present an administrative

claim until September 13, 2021, more than two years later. Her tort

claims against the United States are therefore time barred.

> B. The Westfall Savings Clause does not apply to cases where the United States is substituted as the defendant under 42 U.S.C. § 233.

Evans acknowledges that she failed to present an administrative

claim within two years of claim accrual as required by 28 U.S.C.

§ 2401(b). Br. 7. She nevertheless argues that the district court erred in

dismissing her claim, asserting that her claim should be deemed timely

under the Westfall Act's Savings Clause, 28 U.S.C. § 2679(d)(5). That

provision does not apply here.

1. The Westfall Act and the Health Centers Act are separate

statutory schemes that provide different paths to removal and

substitution of the United States in cases involving different types of

defendants. *Compare* 28 U.S.C. § 233(c), (*l*), *with id.* § 2679(d). The

Westfall Act applies only to suits against government employees. *Id.*

§ 2679(b). The Health Centers Act, by contrast, applies to non-federal,

privately run entities and individuals. 42 U.S.C. § 233(g)(1)(A), (4). These private parties are "deemed" to be Public Health Service employees only for purposes of Section 233, and so removal and substitution in cases involving them is governed by the distinct provisions in Section 233. *Id.* § 233(c), (g)(1)(A), (*l*); *see also Hui v. Castaneda*, 559 U.S. 799, 807-08, 811 (2010) (reasoning that the Westfall Act and Section 233 are separate schemes for substitution of the United States).

The Health Centers Act does not transform private health centers into government employees to which the Westfall Act could apply. It repeatedly specifies that qualifying health centers are "deemed" Public Health Service employees only "[f]or purposes of this section," meaning 42 U.S.C. § 233. *See, e.g.*, 42 U.S.C. § 233(g)(1)(A), (B), (D), (E), (F), (i)(1), (*l*)(1).

Nor does the Health Centers Act otherwise incorporate the Westfall Act. The Health Centers Act has its own removal and substitution provisions, which are distinct from those in the Westfall Act. *Id.* § 233(c), (*l*). After the United States is substituted for the health center under these provisions, the case continues as "a tort action brought

16

against the United States," not against a government employee. *Id.* §

233(c). The Health Centers Act thus does not incorporate Westfall Act's

removal provisions, which apply to suits against an "employee of the

Government," not suits against the United States. 28 U.S.C. § 2679(b);

*Thomas v. Phoebe Putney Health Sys., Inc*, 972 F.3d 1195, 1198, 1203

(11th Cir. 2020) (noting that "[t]he Westfall Act is a separate statutory

scheme offering FTCA protection for employees of the federal

government," and "§ 2679(d) applies only to 'employee[s] of the

government'").

Where Congress intended for a savings provision to apply in

substitution statutes such as the Public Health Service Act, Congress

expressly provided for one.  *See* 42 U.S.C. § 233(p)(3)(A)(ii)-(iii) (tolling

statute of limitations for some purposes for suits related to smallpox

countermeasures, but not for purposes of the administrative exhaustion

requirement); 50 U.S.C. § 2780(d) (savings provision in statute

addressing contractor liability for atomic weapons testing programs);

National Swine Flu Immunization Program of 1976, Pub. L. 94-380, 94,

Stat. 1113 (codified at 42 U.S.C. § 247b(k)(2)(A)(iii), repealed 1978)

(savings provision in amendments to Section 317 of the Public Health

17

Service Act regarding coverage for suits arising out of the administration of swine flu vaccine).

Moreover, even assuming that deemed entities could potentially come within the scope of the Westfall Act, the Westfall Savings Clause does not apply unless substitution in fact took place under the Westfall Act. 28 U.S.C. § 2679(d)(5). The Westfall Savings Clause only applies to suits "in which the United States is substituted as the party defendant *under this subsection*"—meaning 28 U.S.C. § 2679(d). *Id.* (emphasis added). The Health Centers Act has its own substitution provision. *See* 42 U.S.C. § 233(c). These provisions underscore that the Westfall Act is not applicable at all; at a minimum, however, they make clear that the Westfall Act does not apply in cases where removal and substitution occur under the separate provisions of the Health Centers Act.

In this case, the government removed pursuant to 42 U.S.C. § 233, and the United States was substituted as defendant under 42 U.S.C. § 233(c). App. 3. The Westfall Act correctly played no part in this process. Thus, neither the text of the Westfall Savings Clause nor the text of the Health Centers Act supply a basis for invoking the Westfall Savings Clause in this suit.

18

Furthermore, even if the Westfall Saving Clause were applicable in some cases removed under the Health Centers Act, and even if substitution in this case had occurred under the Westfall Act, plaintiff could not avail herself of the Westfall Savings Clause for the additional reason that its requirements are not satisfied here. The Westfall Savings Clause requires the administrative claim to be filed "within 60 days *after* dismissal of the civil action." 28 U.S.C. § 2679(d)(5)(B) (emphasis added). Evans presented her administrative claims with HHS four months *before* her initial action was dismissed. *See* SA 9, 12; *see also P.W. by Woodson v. United States*, 990 F.3d 515, 523 (7th Cir. 2021) (concluding that a plaintiff's complaint before a state agency could not satisfy the Westfall Savings Clause because claims had not been dismissed "as required under 28 U.S.C. § 2679(d)(5)(B)"); *Knapp v. United States*, No. 21-1523, 2022 WL 3657184, at *7 (3d Cir. Aug. 25, 2022) (reasoning that the Westfall Savings Clause could not rescue the plaintiff's claim—even if it applied to health centers—because the plaintiff's administrative claim was presented before her case was dismissed).

2. Evans urges that applying the Westfall Act to health centers "just makes sense." Br. 16. But the Health Centers Act reflects a different judgment, and "Congress wrote the statute it wrote." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014) (quotation marks omitted). The Health Centers Act was first enacted in 1992, just four years after the Westfall Act. Congress could have—but did not—graft the Westfall Act's provisions onto the removal and substitution provisions of the Public Health Service Act. And Congress added the health-center-specific provisions to the Public Health Service Act, rather than the Westfall Act. Moreover, even assuming that there was ambiguity regarding the scope of these provisions, it is axiomatic that "a waiver of sovereign immunity must be unequivocally expressed" and "[a]ny ambiguities in the statutory language are to be construed in favor of immunity." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (quotation marks omitted).

It is unsurprising that Congress would enact different provisions for suits against health center grantees, which are subject to a unique scheme for substitution and removal. Under the Westfall Act, the United States is substituted for federal employees when the Attorney

General certifies that the employee was acting within the scope of their employment. 28 U.S.C. § 2679(d). Under the Health Centers Act, for the suit to proceed against the United States, the health center or its employee "must not only be acting within the scope of his employment but also must check a series of other boxes" before substitution occurs. *See O'Brien v. United States*, 56 F.4th 139, 147 (1st Cir. 2022); 42 U.S.C. § 233(c), (g), (*l*). And it makes sense that Congress would have been less willing to excuse failure to comply with the deadline for presenting an administrative claim in the context of health centers, where the relevant records are not within the government's control.

Additionally, under the Westfall Act, once the Attorney General determines a government employee was acting within the scope of her employment and removes a case, the case cannot be remanded to state court. 28 U.S.C. § 2679(d)(2); *Osborn v. Haley*, 549 U.S. 225, 244 (2007). The defendant employee retains the benefits of being in federal court even if the court ultimately determines that the employee was not acting within the scope of his employment. This stands "in stark contrast" to the removal provisions in 42 U.S.C. § 233, which do permit

remands. *Thomas*, 972 F.3d at 1203; *O'Brien*, 56 F.4th at 147 & n.6; 42 U.S.C. § 233(c), (*l*)(2).

3. Evans does not come to grips with the text and structure of the statutes and instead places heavy reliance on cases in which this Court has assumed, without briefing on the proper interpretation of the relevant statutes, that the Westfall Act applies to health centers. *See* Br. 14-16. These decisions are not controlling and should not be followed here.

Evans relies on a trio of decisions from this Court that assumed the Westfall Act could apply to health centers, but none considered this issue. Br. 15-16 (first citing *Chronis v. United States*, 932 F.3d 544, 549 n.5 (7th Cir. 2019); then citing *Blanche v. United States*, 811 F.3d 953, 957 (7th Cir. 2016); and then citing *Arroyo v. United States*, 656 F.3d 663, 668 (7th Cir. 2011)). These were cases in which the application of the Westfall Saving Clause to health center cases "was not presented as an issue" and "hence was not refined by the fires of adversary presentation." *See United States v. Crawley*, 837 F.2d 291, 293 (7th Cir. 1988) (defining dictum); *see also Arroyo,* 656 F.3d at 667-68, 673 (observing that Westfall Savings Clause applied in a case where the

government invoked the Westfall Act as the basis for substitution and did not challenge its applicability); *Blanche*, 811 F.3d at 957-60 (stating that the "FTCA's savings provision applies," but holding that plaintiff's claim accrued more than two years before her state court lawsuit was filed); *Chronis*, 932 F.3d at 549-50 (holding that patient did not properly exhaust administrative remedies and stating that plaintiff might have time to exhaust administrative remedies in light of the Westfall Savings Clause). More recently, in a case in which the issue was briefly discussed in the briefing, the Court noted that 42 U.S.C. § 233(g), "at least on its face, does not appear to foreclose application of the Westfall Act to federally funded health centers," but determined that it "need not decide this issue." *P.W.*, 990 F.3d at 522 n.4.

These stray statements regarding the Westfall Savings Clause are not binding on this Court. *See Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2498 (2022) ("Dicta that does not analyze the relevant statutory provision cannot be said to have resolved the statute's meaning."); *Johnson v. United States*, 576 U.S. 591, 606 (2015) (reasoning that decisions were reached "without full briefing or argument on that

issue," which leaves the Court "'less constrained to follow precedent'") (quoting *Hahn v. United States*, 524 U.S. 236, 251 (1998)).[1]

The government acknowledges that many of the cases in which courts have assumed that the Westfall Savings Clause would apply to health centers are cases in which the government itself removed pursuant to the Westfall Act.  *See, e.g.*, *Arroyo,* 656 F.3d at 667-68, 673; *Blanche*, 811 F.3d at 957; *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 78 (2d Cir. 2005); *see also O'Brien*, 56 F.4th at 146 (noting that the government initially relied on the Westfall Act but later confessed error and "acknowledged that—notwithstanding its previous filings—the Westfall Act does not apply at all" because the doctor "is not a federal employee"). The cases relied on by Evans are primarily cases in which the United States introduced confusion by mistakenly citing the Westfall Act, in addition to the Health Centers Act in the notice of removal, and then did not argue that the Westfall

---

[1] Evans cites district court cases accepting her view of the Westfall Savings Clause's applicability. Br. 14-16. But district courts are split on this issue, with other courts concluding that the Westfall Savings Clause is not applicable to cases removed under the Health Centers Act. *See Thompson v. United States,* No. 19-CV-08065, 2023 WL 2751112, at *4 (N.D. Ill. 2023); *Patel v. United States*, No. CV-20-01864-PHX-DLR, 2021 WL 2454048, at *2 (D. Ariz. 2021).

Savings Clause was inapplicable. *See* Br. 14-16. These errors do not alter the scheme created by Congress.

     C.    The district court did not abuse its discretion in holding that Evans did not satisfy the requirements for equitable tolling.

The district court did not abuse its discretion in concluding that equitable tolling does not excuse Evans' failure to present an administrative claim within the FTCA's limitations period.

Under controlling federal law, a plaintiff seeking to assert equitable tolling must demonstrate: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.*" Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "Equitable tolling is reserved for rare instances in which a plaintiff was 'prevented in some extraordinary way from filing his complaint in time.'" *Blanche,* 811 F.3d at 962 (quoting *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001)). It does not apply to "garden variety claim[s] of excusable neglect." *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96 (1990).

Evans does not satisfy these requirements. She has not demonstrated either that she has pursued her claims diligently or

pointed to any extraordinary circumstance that prevented her from timely filing her administrative claim.

As this Court has noted, HHS maintains a website identifying federally funded health centers. *Arteaga v. United States*, 711 F.3d 828, 834 (7th Cir. 2013); https://findahealthcenter.hrsa.gov/ (last visited Aug. 9, 2023). "Medical malpractice attorneys have an obligation upon being retained by a new client to research the possible defendants at issue," including "whether the possible defendants are federally affiliated, and thus can only be sued under the FTCA." *Blanche*, 811 F.3d at 962. As this Court has explained, "[m]embers of the medical malpractice bar should know enough to consult the website when approached by a prospective client." *Arteaga*, 711 F.3d at 834. Indeed, this court has repeatedly "reminded the medical malpractice bar of this database," *P.W.*, 990 F.3d at 524, and has explained that it is "not asking too much of the medical malpractice bar" to check the database. *Arteaga*, 711 F.3d at 834; *Blanche*, 811 F.3d at 962.

Evans was aware when she filed her initial, state court complaint that Dr. Oronsaye was an employee of Access. App. 8. But Evans does not assert that she attempted to investigate Dr. Oronsaye's or Access's

federal status. Nor does she present any reason to believe that she would have been unable to determine it had she tried. Equitable tolling cannot apply.

Evans does not advance her case in arguing (Br. 18) that it was an "open question" when she initially filed suit whether Dr. Oronsaye would receive FTCA coverage for his treatment of Evans. This uncertainty meant that a diligent plaintiff would have known that her only remedy might be against the United States, and it would be prudent to present an administrative claim to preserve the ability to pursue such a claim.

Evans also asserts (Br. 18) that "Seventh Circuit law strongly implied the savings clause *did* apply to federally funded health centers" when she filed her complaint. But a change in the law does not ordinarily justify equitably tolling. *See Lo v. Endicott*, 506 F.3d 572, 576 (7th Cir. 2007) (concluding that change in law is not an "extraordinary circumstance" justifying equitable tolling in context of habeas petition) (quotation marks omitted); *Fayoade v. Spratte*, 284 F. App'x 345, 347–48 (7th Cir. 2008) (applying *Lo* to civil suit outside of the habeas context). Moreover, Evans has not represented that she in fact

researched this question or was misled by this Court's precedent. *See* Br. 18 (asserting only that the cases "would have suggested to someone researching the matter" that the Westfall Savings Clause would apply).

In any event, Evans's time for filing an administrative claim did not expire until after this Court decided *P.W.* In that case, this Court noted that the government had argued that the Westfall Savings Clause did not apply to suits against health centers and declined to resolve the issue. *P.W.*, 990 F.3d at 522 n.4. The Court also reminded the medical malpractice bar, yet again, of the importance of checking the HHS website. *Id.* at 524. This was more than enough to put a diligent litigant on notice that she should file an administrative claim if she wished to preserve her ability to file suit against the United States.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should

be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

MORRIS PASQUAL
  *Acting United States Attorney*

MARK B. STERN

  *s/ Dana Kaersvang*
DANA KAERSVANG
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7216*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 307-1294*
  *Dana.L.Kaersvang@usdoj.gov*

August 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,567 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Dana Kaersvang*
DANA KAERSBANG

**ADDENDUM**

# TABLE OF CONTENTS

28 U.S.C. § 2401(b) ................................................................... A1

28 U.S.C. § 2675(a) ................................................................... A1

28 U.S.C. § 2679 ........................................................................ A2

42 U.S.C. § 233 .......................................................................... A5

## 28 U.S.C. § 2401

§ 2401. Time for commencing action against United States

* * *

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

## 28 U.S.C. § 2675

§ 2675. Disposition by federal agency as prerequisite; evidence

(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

* * *

## 28 U.S.C. § 2679

§ 2679. Exclusiveness of remedy

(a) The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

(b)(1) The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

(2) Paragraph (1) does not extend or apply to a civil action against an employee of the Government--

(A) which is brought for a violation of the Constitution of the United States, or

(B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.

(c) The Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government or his estate for any such damage or injury. The employee against whom such civil action or proceeding is brought shall deliver within such time after date of service or knowledge of service as determined by the Attorney General, all process served upon him or an attested true copy thereof to his immediate superior or to whomever was designated by the head of his department to receive such papers and such person shall promptly furnish copies of the pleadings and process therein to the United States attorney for the district embracing the place wherein the proceeding is

A2

brought, to the Attorney General, and to the head of his employing Federal agency.

(d)(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

(2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

(3) In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. A copy of the petition shall be served upon the United States in accordance with the provisions of Rule 4(d)(4)1 of the Federal Rules of Civil Procedure. In the event the petition is filed in a civil action or proceeding pending in a State court, the action or proceeding may be removed without bond by the Attorney General to the district court of the United States for the district and division embracing the place in which it is pending. If, in considering

A3

the petition, the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court.

(4) Upon certification, any action or proceeding subject to paragraph (1), (2), or (3) shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions.

(5) Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if--

(A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and

(B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.

(e) The Attorney General may compromise or settle any claim asserted in such civil action or proceeding in the manner provided in section 2677, and with the same effect.

**42 U.S.C. § 233**

§ 233. Civil actions or proceedings against commissioned officers or employees

(a) Exclusiveness of remedy

The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

(b) Attorney General to defend action or proceeding; delivery of process to designated official; furnishing of copies of pleading and process to United States attorney, Attorney General, and Secretary

The Attorney General shall defend any civil action or proceeding brought in any court against any person referred to in subsection (a) of this section (or his estate) for any such damage or injury. Any such person against whom such civil action or proceeding is brought shall deliver within such time after date of service or knowledge of service as determined by the Attorney General, all process served upon him or an attested true copy thereof to his immediate superior or to whomever was designated by the Secretary to receive such papers and such person shall promptly furnish copies of the pleading and process therein to the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the Secretary.

(c) Removal to United States district court; procedure; proceeding upon removal deemed a tort action against United States; hearing on motion to remand to determine availability of remedy against United States; remand to State court or dismissal

A5

Upon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of Title 28 and all references thereto. Should a United States district court determine on a hearing on a motion to remand held before a trial on the merit that the case so removed is one in which a remedy by suit within the meaning of subsection (a) of this section is not available against the United States, the case shall be remanded to the State Court: Provided, That where such a remedy is precluded because of the availability of a remedy through proceedings for compensation or other benefits from the United States as provided by any other law, the case shall be dismissed, but in the event the running of any limitation of time for commencing, or filing an application or claim in, such proceedings for compensation or other benefits shall be deemed to have been suspended during the pendency of the civil action or proceeding under this section.

(d) Compromise or settlement of claim by Attorney General

The Attorney General may compromise or settle any claim asserted in such civil action or proceeding in the manner provided in section 2677 of Title 28 and with the same effect.

(e) Assault or battery

For purposes of this section, the provisions of section 2680(h) of Title 28 shall not apply to assault or battery arising out of negligence in the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigations.

* * *

(g) Exclusivity of remedy against United States for entities deemed Public Health Service employees; coverage for services furnished to individuals other than center patients; application process; subrogation

A6

of medical malpractice claims; applicable period; entity and contractor defined

(1)(A) For purposes of this section and subject to the approval by the Secretary of an application under subparagraph (D), an entity described in paragraph (4), and any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner (subject to paragraph (5)), shall be deemed to be an employee of the Public Health Service for a calendar year that begins during a fiscal year for which a transfer was made under subsection (k)(3) (subject to paragraph (3)). The remedy against the United States for an entity described in paragraph (4) and any officer, governing board member, employee, or contractor (subject to paragraph (5)) of such an entity who is deemed to be an employee of the Public Health Service pursuant to this paragraph shall be exclusive of any other civil action or proceeding to the same extent as the remedy against the United States is exclusive pursuant to subsection (a).

(B) The deeming of any entity or officer, governing board member, employee, or contractor of the entity to be an employee of the Public Health Service for purposes of this section shall apply with respect to services provided--

(i) to all patients of the entity, and

(ii) subject to subparagraph (C), to individuals who are not patients of the entity.

(C) Subparagraph (B)(ii) applies to services provided to individuals who are not patients of an entity if the Secretary determines, after reviewing an application submitted under subparagraph (D), that the provision of the services to such individuals--

(i) benefits patients of the entity and general populations that could be served by the entity through community-wide intervention efforts within the communities served by such entity;

(ii) facilitates the provision of services to patients of the entity; or

(iii) are otherwise required under an employment contract (or similar arrangement) between the entity and an officer, governing board member, employee, or contractor of the entity.

(D) The Secretary may not under subparagraph (A) deem an entity or an officer, governing board member, employee, or contractor of the entity to be an employee of the Public Health Service for purposes of this section, and may not apply such deeming to services described in subparagraph (B)(ii), unless the entity has submitted an application for such deeming to the Secretary in such form and such manner as the Secretary shall prescribe. The application shall contain detailed information, along with supporting documentation, to verify that the entity, and the officer, governing board member, employee, or contractor of the entity, as the case may be, meets the requirements of subparagraphs (B) and (C) of this paragraph and that the entity meets the requirements of paragraphs (1) through (4) of subsection (h).

(E) The Secretary shall make a determination of whether an entity or an officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section within 30 days after the receipt of an application under subparagraph (D). The determination of the Secretary that an entity or an officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section shall apply for the period specified by the Secretary under subparagraph (A).

(F) Once the Secretary makes a determination that an entity or an officer, governing board member, employee, or contractor of an entity is deemed to be an employee of the Public Health Service for purposes of this section, the determination shall be final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding. Except as provided in subsection (i), the Secretary and the Attorney General may not determine that the provision of services which are the subject of such a determination are not covered under this section.

(G) In the case of an entity described in paragraph (4) that has not submitted an application under subparagraph (D):

(i) The Secretary may not consider the entity in making estimates under subsection (k)(1).

(ii) This section does not affect any authority of the entity to purchase medical malpractice liability insurance coverage with Federal funds provided to the entity under section 254b, 254b, or 256a1 of this title.

(H) In the case of an entity described in paragraph (4) for which an application under subparagraph (D) is in effect, the entity may, through notifying the Secretary in writing, elect to terminate the applicability of this subsection to the entity. With respect to such election by the entity:

(i) The election is effective upon the expiration of the 30-day period beginning on the date on which the entity submits such notification.

(ii) Upon taking effect, the election terminates the applicability of this subsection to the entity and each officer, governing board member, employee, and contractor of the entity.

(iii) Upon the effective date for the election, clauses (i) and (ii) of subparagraph (G) apply to the entity to the same extent and in the same manner as such clauses apply to an entity that has not submitted an application under subparagraph (D).

(iv) If after making the election the entity submits an application under subparagraph (D), the election does not preclude the Secretary from approving the application (and thereby restoring the applicability of this subsection to the entity and each officer, governing board member, employee, and contractor of the entity, subject to the provisions of this subsection and the subsequent provisions of this section).

(2) If, with respect to an entity or person deemed to be an employee for purposes of paragraph (1), a cause of action is instituted against the United States pursuant to this section, any claim of the entity or person for benefits under an insurance policy with respect to medical malpractice relating to such cause of action shall be subrogated to the United States.

(3) This subsection shall apply with respect to a cause of action arising from an act or omission which occurs on or after January 1, 1993.

(4) An entity described in this paragraph is a public or non-profit private entity receiving Federal funds under section 254b of this title.

(5) For purposes of paragraph (1), an individual may be considered a contractor of an entity described in paragraph (4) only if--

(A) the individual normally performs on average at least 32 ½ hours of service per week for the entity for the period of the contract; or

(B) in the case of an individual who normally performs an average of less than 32 ½ hours of services per week for the entity for the period of the contract, the individual is a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology.

(h) Qualifications for designation as Public Health Service employee

The Secretary may not approve an application under subsection (g)(1)(D) unless the Secretary determines that the entity--

(1) has implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity;

(2) has reviewed and verified the professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians and other licensed or certified health care practitioners, and, where necessary, has obtained the permission from these individuals to gain access to this information;

(3) has no history of claims having been filed against the United States as a result of the application of this section to the entity or its officers, employees, or contractors as provided for under this section, or, if such a history exists, has fully cooperated with the Attorney General in defending against any such claims and either has taken, or will take, any necessary corrective steps to assure against such claims in the future; and

(4) will fully cooperate with the Attorney General in providing information relating to an estimate described under subsection (k).

(i) Authority of Attorney General to exclude health care professionals from coverage

A10

(1) Notwithstanding subsection (g)(1), the Attorney General, in consultation with the Secretary, may on the record determine, after notice and opportunity for a full and fair hearing, that an individual physician or other licensed or certified health care practitioner who is an officer, employee, or contractor of an entity described in subsection (g)(4) shall not be deemed to be an employee of the Public Health Service for purposes of this section, if treating such individual as such an employee would expose the Government to an unreasonably high degree of risk of loss because such individual--

(A) does not comply with the policies and procedures that the entity has implemented pursuant to subsection (h)(1);

(B) has a history of claims filed against him or her as provided for under this section that is outside the norm for licensed or certified health care practitioners within the same specialty;

(C) refused to reasonably cooperate with the Attorney General in defending against any such claim;

(D) provided false information relevant to the individual's performance of his or her duties to the Secretary, the Attorney General, or an applicant for or recipient of funds under this chapter; or

(E) was the subject of disciplinary action taken by a State medical licensing authority or a State or national professional society.

(2) A final determination by the Attorney General under this subsection that an individual physician or other licensed or certified health care professional shall not be deemed to be an employee of the Public Health Service shall be effective upon receipt by the entity employing such individual of notice of such determination, and shall apply only to acts or omissions occurring after the date such notice is received.

* * *

(l) Timely response to filing of action or proceeding

(1) If a civil action or proceeding is filed in a State court against any entity described in subsection (g)(4) or any officer, governing board member, employee, or any contractor of such an entity for damages described in subsection (a), the Attorney General, within 15 days after

A11

being notified of such filing, shall make an appearance in such court and advise such court as to whether the Secretary has determined under subsections (g) and (h), that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding. Such advice shall be deemed to satisfy the provisions of subsection (c) that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility.

(2) If the Attorney General fails to appear in State court within the time period prescribed under paragraph (1), upon petition of any entity or officer, governing board member, employee, or contractor of the entity named, the civil action or proceeding shall be removed to the appropriate United States district court. The civil action or proceeding shall be stayed in such court until such court conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim for damages described in subsection (a) and issues an order consistent with such determination.

* * *

(p) Administration of smallpox countermeasures by health professionals

(1) In general

For purposes of this section, and subject to other provisions of this subsection, a covered person shall be deemed to be an employee of the Public Health Service with respect to liability arising out of administration of a covered countermeasure against smallpox to an individual during the effective period of a declaration by the Secretary under paragraph (2)(A)

* * *

(3) Exhaustion; exclusivity; offset

(A) Exhaustion

(i) In general

A12

A person may not bring a claim under this subsection unless such person has exhausted such remedies as are available under part C of this subchapter, except that if the Secretary fails to make a final determination on a request for benefits or compensation filed in accordance with the requirements of such part within 240 days after such request was filed, the individual may seek any remedy that may be available under this section.

(ii) Tolling of statute of limitations

The time limit for filing a claim under this subsection, or for filing an action based on such claim, shall be tolled during the pendency of a request for benefits or compensation under part C of this subchapter.

(iii) Construction

This subsection shall not be construed as superseding or otherwise affecting the application of a requirement, under chapter 171 of Title 28, to exhaust administrative remedies.

* * *

**SUPPLEMENTAL APPENDIX**

## TABLE OF CONTENTS

Complaint, Dkt. No. 1 (Mar. 29, 2022) ...............................................SA1

Declaration of Erica Gibson, Dkt. No. 15-1 (Aug. 26, 2022)...............SA8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**DENISE EVANS,**

**Plaintiff,**

**Court #:**

*versus*

**THE UNITED STATES OF AMERICA,**

**Defendant.**

## COMPLAINT AT LAW

NOW COMES the Plaintiff, DENISE EVANS, deceased, by and through her attorneys, LAW

OFFICES OF STEVEN J. MALMAN & ASSOCIATES, P.C., and for her Complaint at Law

against the Defendant THE UNITED STATES OF AMERICA, states as follows:

### COUNT I
### MEDICAL NEGLIGENCE
### (EVANS V. ORONSAYE)

1.      On and before July 24, 2019, and at all times relevant to this cause of action, the

Defendant OSARENTIN ORONSAYE, M.D. was and is a physician licensed to practice medicine

in the State of Illinois, specializing in obstetrics and gynecology.

2.      At all times relevant to this cause of action, OSARENTIN ORONSAYE, M.D.

provided medical services to the public, including DENISE EVANS (hereinafter "DENISE").

3.      At all times relevant to this cause of action, Defendant OSARENTIN ORONSAYE,

M.D. held himself out and otherwise informed the public and the Plaintiff that he possessed the

requisite skill, competence, knowledge and personnel to properly care for and treat patients like

DENISE.

SA1

4.      At all times relevant to this cause of action, the Plaintiff, DENISE, entrusted herself entirely to the care of OSARENTIN ORONSAYE, M.D.

5.      At all times relevant to this cause of action, OSARENTIN ORONSAYE, M.D. was acting in the course and scope of his employment with THE UNITED STATES OF AMERICA, and therefore THE UNITED STATES OF AMERICA is liable to those injured by OSARENTIN ORONSAYE, M.D.'s negligent acts and/or omissions, including DENISE.

6.      Intermittently between July 24, 2019 and August 2, 2019, DENISE was cared for and treated by Defendant OSARENTIN ORONSAYE, M.D.

7.      At all times relevant to this cause of action, it was the duty of OSARENTIN ORONSAYE, M.D., to possess and apply the knowledge and use the skill and care ordinarily used by physicians practicing in the field of obstetrics and gynecology with respect to the diagnosis, care and treatment of DENISE.

8.      Notwithstanding the foregoing duty, OSARENTIN ORONSAYE, M.D., did commit one or more or all of the foregoing acts and/or omissions:

    (a)     Failed to inform DENISE's of the results of her endometrial biopsy and polyp removal;

    (b)     Failed to discuss reasonable treatment alternatives with DENISE, including postponing the hysterectomy, given her normal pathology results;

    (c)     Failed to identify DENISE's ureter during her August 2, 2019 hysterectomy; and

    (d)     Failed to protect DENISE's ureter during her August 2, 2019 hysterectomy;

8.      As a direct and proximate result of the professional negligence of OSARENTIN ORONSAYE, M.D., DENISE suffered injuries, including but not limited to a right ureteral injury, causing her to experience pain and suffering, loss of a normal life, disability, and to become

SA2

responsible for the payment of large sums of money for her medical care and treatment, all to her damage.

9.      Pursuant to the provisions of Section 2-622 of the Illinois Code of Civil Procedure, the Affidavit of Matthew Heimlich is attached to this Complaint.

10.     Pursuant to the provisions of Section 2-622 of the Illinois Code of Civil Procedure, the report of a reviewing health professional is attached to this Complaint.

WHEREFORE the Plaintiff, DENISE EVANS, deceased, prays for judgment against the Defendant, THE UNITED STATES OF AMERICA., in a sum in excess of fifty thousand dollars ($50,000.00) that will fairly and adequately compensate the Plaintiff, together with costs of this suit.

Respectfully submitted,
MALMAN LAW

/s/ Matthew Heimlich
Attorney for Plaintiff

Matthew Heimlich (ARDC # 6300000)
LAW OFFICES OF STEVEN J. MALMAN
& ASSOCIATES, P.C.
205 West Randolph Street, Suite 1700
Chicago, IL 60606
(312) 629-0099
mheimlich@malmanlaw.com

SA3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DENISE EVANS,** | |
| **Plaintiff,** | **Court #:** |
| *versus* | |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

## AFFIDAVIT PURSUANT TO 735 ILCS § 5/2-622

I, Matthew Heimlich, being first duly sworn under oath, state as follows:

1.      That I have consulted and reviewed the facts of this case with a physician licensed to practice medicine in all its branches who I reasonably believe (a) is knowledgeable in the relevant issues involved in this particular action; (b) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in this particular action; and (c) is qualified by experience or demonstrated competence in the subject this case.

2.      That attached is the reviewing physician's written report, which after review of the medical records and other relevant material involved in this particular action indicates that there is a reasonable and meritorious cause for the filing of such action.

3.      That I have concluded on the basis of the physician's professional's review and consultation that there is a reasonable and meritorious cause for the filing of this action.

4.      That attached is a copy of the physician's report referenced in this affidavit as Exhibit A, further affiant sayeth not.

/s/ Matthew Heimlich
Attorney for Plaintiff

SA4

SUBSCRIBED AND SWORN TO
before me this 29th day
of March, 2022.

/s/ Raquel Renteria
Notary Public

RE:    Denise Evans v. Osarentin Oronsaye, M.D.

**HEALTH PROFESSIONAL'S REPORT**

1.    I am a physician licensed to practice medicine in all its branches and practice or teach in the area of medicine applicable in this case.

2.    I am knowledgeable in the relevant issues involved in this particular action.

3.    I have practiced within the last 6 years in the same area of health care or medicine that is at issue in this particular action and/or have taught within the last 6 years in the same area of health care or medicine that is at issue in this particular action.

4.    I am qualified by experience and have demonstrated competence in the subject of this cause.

5.    I am familiar with the standard of care for obstetricians and gynecologists as it currently relates to issues of informed consent, care and treatment for patients undergoing a hysterectomy.

6.    I have read and reviewed documents, including but not limited to the following of Denise Evans' ("DENISE") records in this case:

    a.    Access Community Health
        i.    Dates of Treatment:  5/17/19 to 8/27/19 (intermittent)

    b.    Mt. Sinai Hospital
        i.    Dates of Treatment:  8/2/19 to 8/3/19; 8/9/19 to 8/16/19; 8/20/19 to 11/18/19 (intermittent)

    c.    University of Illinois Chicago Medical Center
        i.    Dates of Treatment:   12/18/19 to 12/19/19; 1/20/20 to 1/23/20; 2/5/20

7.    On June 18, 2019, DENISE presented to DR. OSARENTIN ORONSAYE ("DR. ORONSAYE") with complaints of vaginal bleeding after 8 months of not having her menses.  An ultrasound revealed multiple fibroids and DENISE underwent an endometrial biopsy and cervical polyp removal on July 18, 2019.

8.    On July 24, 2019, DR. ORONSAYE went through the risks and benefits of the potential treatment options, indicating DENISE declined treatment options other than hysterectomy and scheduled surgery.

9.    On July 25, 2019, the pathology report on the cervical polyp report came back as benign and the endometrial biopsy came back with normal findings.  There is no indication these results were conveyed to DENISE, or alternative treatment options based on these normal findings were discussed with DENISE, including postponing the hysterectomy surgery to determine if the cervical polyp was causing the complained of bleeding.

10.    On August 2, 2019, DR. ORONSAYE performed a laparoscopic-assisted vaginal hysterectomy and bilateral salpingo-oophorectomy on DENISE at Mount Sinai Hospital. There is no indication in DR. ORONSAYE's operative report of what, if any, precautions he took to guard against ureteral injury, a known potential complication of the procedure.

11.    On August 8, 2019, DENISE returned to Mount Sinai Hospital with complaints of abdominal pain and distention.  On August 14, 2019, she was discovered to have a right

ureteral injury and a ureteral stent was placed later that day.  She was discharged home with a drain and Foley catheter on August 16, 2019.

12.    During his care and treatment of DENISE, DR. ORONSAYE had a duty to provide medical services, care and treatment in accordance with accepted standards of care in the field of obstetrics and gynecology.

13.    Based upon my education, training, experience and knowledge, and review of the above-referenced materials, it is my opinion, to a reasonable degree of medical certainty, that the care and treatment provided by DR. ORONSAYE to DENISE beginning on July 24, 2019 and continuing through August 2, 2019, fell below the minimum standard of care and constituted negligence as he:

      (a)    Failed to objectively observe, assess and evaluate DENISE's condition
           during his course of treatment with her;

      (b)    Failed to inform DENISE of the results of her endometrial biopsy and
           polyp removal;

      (c)    Failed to discuss reasonable treatment alternatives with DENISE, including postponing the hysterectomy, given her normal pathology results;

      (d)    Failed to obtain informed consent from DENISE for her August 2, 2019
           hysterectomy;

      (e)    Failed to identify DENISE's ureter during her August 2, 2019 hysterectomy; and

      (f)    Failed to protect DENISE's ureter during her August 2, 2019 hysterectomy;

14.    As a result of the failures of care and negligent acts and omissions of the DR. ORONSAYE, DENISE suffered injuries including, but not limited to a right ureteral injury which has caused her unnecessary pain and suffering, disability, disfigurement, additional medical expenses, and other damages.

15.    In my opinion, there is a reasonable and meritorious basis for filing a cause of action against DR. ORONSAYE.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 1627 |
| v. | ) | |
| | ) | Judge Feinerman |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF ERICA GIBSON IN SUPPORT OF
DEFENDANT UNITED STATES' MOTION TO DISMISS**

I, Erica Gibson, make the following declaration in lieu of affidavit pursuant to 28 U.S.C. §

1746. I am aware that this declaration is the legal equivalent of a statement under oath and that it

will be filed in the United States District Court for the Northern District of Illinois.

1.      I am an adult, competent and have personal knowledge of the facts contained

herein.

2.      I am an Attorney in the General Law Division, Office of the General Counsel,

Department of Health and Human Services (the "Department").  I am familiar with the official

records of administrative tort claims maintained by the Department as well as with the system by

which those records are maintained.

3.      The Department has a Claims Office that maintains in a computerized database a

record of administrative tort claims filed with the Department, including those filed with respect

to federally supported health centers that have been deemed to be eligible for Federal Tort Claims

Act malpractice coverage.

4.      As a consequence, if an administrative tort claim had been filed with the

Department with respect to Access Community Health Network, its approved delivery sites or its

employees and/or qualified contractors, a record of that filing would be maintained in the Claims Office's database.

5.      I have caused a search of the Claims Office's database to be conducted and found that, on September 23, 2021, the Department received an administrative tort claim filed by Denise Evans relating to medical care provided by employees of Access Community Health Network.  A true and correct copy of Evans' administrative tort claim is attached hereto as Exhibit 1.

6.      To date, no final disposition has been made regarding Denise Evans' administrative tort claim.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Executed this 25th day of August 2022.

Erica J. Gibson -S
Digitally signed by Erica J. Gibson -S
Date: 2022.08.25 14:11:32 -04'00'

_____
Erica Gibson
Attorney, Claims and Employment Law Branch

2

SA9

# Exhibit 1



205 West Randolph Street, Suite 610, Chicago, Illinois 60606
Phone (312) 629-0099 | Fax (312) 629-1188
1-888-**MALMAN-LAW** (1-888-625-6265)

**MALMANLAW.COM**

Protecting the Rights of the Injured

Writer's email: mheimlich@malmanlaw.com



September 14, 2021

***VIA US MAIL***
U.S. Department of Health and Human Services
Office of General Counsel – Law Division, Attention: Claims
330 C Street, SW Switzer Building, Suite 2600
Washington, D.C. 20201

     Re:    Denise Evans v. United States

Dear Sir/Madam:

Enclosed please find the original and two copies of Form 95 Claim for Damages, Injury or Death
on behalf of Denise Evans, as well as a thumb drive containing the relevant medical records.

              Sincerely yours,

              */s/    Matthew Heimlich*
              Matthew Heimlich

MRH/jj

Enclosures

SA11

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Access Community Health Network<br>245 South Gary Avenue, #200<br>Bloomingdale, IL 60108 | Denise Evans, 3323 West Maypole Avenue, Apt. 2C, Chicago, IL 60624-2065<br>Malman Law, 205 West Randolph, Suite 1700, Chicago, IL 60606 (legal rep for claimant) |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☑ CIVILIAN | 07/23/1967 | | 08/02/2019 | |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Response to No. 8 Basis of Claim, attached

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See Response to No. 10, Personal Injury, attached

11. **WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See Response to No. 11 "Witnesses", attache | |

12. (See instructions on reverse). **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| | 5,000,000 | | 5,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| Denise Evans | 3095857968 | 09/13/2021 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE

42

INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

| 15. Do you carry accident insurance? [ ] Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. [ ] No |
|---|

| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? [ ] Yes [✓] No | 17. If deductible, state amount. |
|---|---|

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

N/A

| 19. Do you carry public liability and property damage insurance? [ ] Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). [✓] No |
|---|

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

Claimant: Denise Evans

DOB: 7/23/1967

### Response to Question No. 8 – Basis of Claim

At all times relevant to this claim, OSARENTIN ORONSAYE, M.D. was and is a physician licensed to practice medicine in the State of Illinois, specializing in obstetrics and gynecology. At all times relevant to this claim, OSARENTIN ORONSAYE, M.D. provided medical services to the public, including DENISE EVANS (hereinafter "DENISE"). At all times relevant to this claim, ACCESS COMMUNITY HEALTH NETWORK employed various physicians, including OSARENTIN ORONSAYE, M.D. Intermittently between July 24, 2019 and August 2, 2019, DENISE was cared for and treated by ACCESS COMMUNITY HEALTH NETWORK through its authorized agent, apparent agent, servant, and/or employee OSARENTIN ORONSAYE, M.D.

At all times relevant to this cause of action, Defendant ACCESS COMMUNITY HEALTH NETWORK held itself out and otherwise informed the public and the Plaintiff that it, through its authorized agents, apparent agents, servants and/or employees, including OSARENTIN ORONSAYE, M.D., had and possessed the requisite skill, competence, knowledge and personnel to properly care for and treat patients like DENISE. At all times relevant to this cause of action, the Plaintiff, DENISE, entrusted herself entirely to the care of ACCESS COMMUNITY HEALTH NETWORK, through its authorized agent, apparent agent, servant and/or employee OSARENTIN ORONSAYE, M.D.

At all times relevant to this cause of action, it was the duty of Defendant ACCESS COMMUNITY HEALTH NETWORK, through its authorized agent, apparent agent, servant, and/or employee OSARENTIN ORONSAYE, M.D, to possess and apply the knowledge and use

the skill and care ordinarily used by physicians practicing in the field of obstetrics and gynecology with respect to the diagnosis, care and treatment of DENISE.

Notwithstanding the foregoing duty, Defendant, ACCESS COMMUNITY HEALTH NETWORK through its authorized agent, apparent agent, servant, and/or employee OSARENTIN ORONSAYE, M.D, did commit one or more or all of the foregoing acts and/or omissions:

(a)    Failed to inform DENISE's of the results of her endometrial biopsy and polyp removal;

(b)    Failed to discuss reasonable treatment alternatives with DENISE, including postponing the hysterectomy, given her normal pathology results;

(c)    Failed to identify DENISE's ureter during her August 2, 2019 hysterectomy; and

(d)    Failed to protect DENISE's ureter during her August 2, 2019 hysterectomy;

## Response to Question 10:  Personal Injury / Wrongful Death

As a direct and proximate result of the professional negligence of Defendant ACCESS COMMUNITY HEALTH NETWORK, through its authorized agent, apparent agent, servant, and/or employee OSARENTIN ORONSAYE, M.D., DENISE suffered injuries, including but not limited to a right ureteral injury, causing her to undergo numerous subsequent procedures, experience pain and suffering, loss of a normal life, disability, and to become responsible for the payment of large sums of money for her medical care and treatment, all to her damage.

See also attached medical records documenting DENISE's injuries.

## Response to No. 11 – Witnesses

Osarentin Oronsaye, M.D., 2653 West Ogden Avenue, 3rd Floor, Chicago, IL, 60608

Simone Crivellaro, M.D., 1740 West Taylor Street, Chicago, IL 60612

Amir Vafa, M.D., 1500 South California Avenue, Chicago, IL 60608

See also medical providers contained within attached medical records from Mt. Sinai Hospital and

University of Illinois Hospital.